**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID BYUN,<br><br>       Plaintiff,<br><br>  v.<br><br>NAMIE AMURO, AVEX GROUP HOLDINGS, INC., AVEX TRAX, AVEX ENTERTAINMENT, INC., AVEX MARKETING, INC., VISION FACTORY CO., LTD., AMI, TBWA\HAKUHODO, AMANA INC., BLAUGRANA CO., LTD., MONSTER ULTRA INC., and SHOJI UCHIDA,<br><br>       Defendants. | 10 CV 5417 (DAB) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

THOMPSON HINE LLP
335 Madison Avenue, 12th Fl.
New York, New York 10017

*Attorneys for Plaintiff David Byun*

Dated:  March 9, 2011

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

POINT I THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS.............. 3

    A.      Determination of a Rule 12(b)(2) Motion ................................................ 4

    B.      New York's Long-Arm Statute .................................................................. 4

          1.      CPLR § 302(a)(1) – Defendants Contracted to Supply the Album in New York ............................................................................. 5

          2.      CPLR 302(a)(2) – Defendants Committed a Tortious Act in New York ......................................................................................... 7

          3.      CPLR 302(a)(3)(ii) – Defendants Committed a Tortious Act Outside of New York Injuring Plaintiff in New York ......................... 9

    C.      Due Process.............................................................................................. 12

          1.      Minimum Contacts ..................................................................... 12

          2.      Reasonableness .......................................................................... 13

POINT II PLAINTIFF'S COMPLAINT STATES VALID CLAIMS UPON WHICH RELIEF MAY BE GRANTED ............................................................................ 14

    A.      Plaintiff Has Surpassed the Pleading Standards Set Forth in *Twombly* ..................... 14

    B.      Plaintiff Has Stated a Proper Claim for Copyright Infringement (Count I)............... 15

    C.      Plaintiff Has Stated Proper Claims Under The Lanham Act (Counts II and III)........ 17

    D.      Plaintiff Has Stated Proper New York State Claims (Counts IV, V, VI, and VII)....................................................................................................... 18

POINT III DEFENDANTS' MOTION TO DISMISS ON FORUM NON CONVENIENS GROUNDS SHOULD BE DENIED ....................................................... 19

    A.      Plaintiff's Chosen Forum is Entitled to Great Deference ........................... 20

    B.      Japan is not an Adequate Alternative Forum .............................................. 22

    C.      Defendants Have Failed to Show That The Balance of Private and Public Interests Tips Decidedly In Favor of Adjudication in Japan ..................... 23

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993) ...................................... 4

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................... 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................... 14, 15

*BFI Group Divino Corp. v. JSC Russian Aluminum,* 298 Fed. Appx. 87, 90 (2d Cir. 2008) ............. 20

*Blakeman v. Walt Disney Co., et al.*, 613 F. Supp. 2d 288 (E.D.N.Y. 2009) ................................ 4, 7, 8

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ...................................................... 13

*Byrne v. British Broadcasting Corp.*, 132 F. Supp. 2d 229 (S.D.N.Y. 2001) ......................... 21, 23, 24

*Capitol Records, Inc. v. Kuang Dyi Co. of RM*, 2004 U.S. Dist. LEXIS 3305 (S.D.N.Y. Mar. 4, 2004) ................................................................................................... 7, 8, 12

*Cartier v. Seah LLC*, 598 F. Supp. 2d 422 (S.D.N.Y. 2009) ........................................... 5, 9

*City of Monroe Employees Retirement System v. Bridgestone Corp.*, 399 F.3d 651 (6th Cir. 2005) ............................................................................................................ 16

*Claudio v. Sawyer*, No. 10-0145-cv, 2011 U.S. App. LEXIS 2700 (2d Cir. Feb. 10, 2011) .............. 14

*Colour & Design v. U.S. Vinyl Manufacturing Corp.*, No. 04-Civ-8332, 2005 U.S. Dist. LEXIS 10964 (S.D.N.Y. June 3, 2005) ............................................................... 7

*Cordon Holding B.V. v. Northwest Public Corp.*, No. 98 Civ. 4797, 1998 WL 867388 .............. 24, 25

*CutCo Industrial, Inc. v. Naughton*, 806 F.2d 361 (2d. Cir. 1986) ...................................... 5, 6

*DiRienzo v. Philip Services Corp.*, 294 F.3d 21 (2d Cir. 2002) ...................................... 23, 24

*Editorial Musical Latino Americana, S.A. v. MAR International Records, Inc.*, 829 F. Supp. 62 (S.D.N.Y. 1993) ................................................................................ 5, 7, 8

*Energy Brands Inc. v. Spiritual Brands, Inc., et al.*, 571 F. Supp. 2d 458 (S.D.N.Y. 2008) ................................................................................... 10, 11, 12

*Fuji Photo Film Co. v. Shinohara Shoii Kabushiki Kaisha*, 754 F.2d 591 (5th Cir.1985) ............ 19, 22

*Fulst v. Thompson*, No. 2:09-cv-72 (JLG), 2009 WL 4153222 (S.D. Ohio Nov. 20, 2009) ...................................... 17

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947) ............................ 20, 23

*Hollins v. United States Tennis Association*, 469 F. Supp. 2d 67 (E.D.N.Y. 2006) ........................ 4, 7

*Imperial Hotels Corp. v. Dore*, 257 F.3d 615 (6th Cir. 2001) ...................................................... 16, 17

*Information Superhighway, Inc. v. Talk America, Inc.*, 395 F. Supp. 2d 44 (S.D.N.Y. 2005) ........... 19

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ............................................................. 13

*Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir.2001) ............................................................ 20

*Jose Armando Bermudez & Co., v. Bermudez International*, No. 99 Civ 9346,
    2000 WL 1225792 (S.D.N.Y. Aug.29, 2000) ............................................................................ 22, 23

*Kline v. Mtg. Elec. Registration Sys., Inc.*, No. 3:08cv408 (WHR),
    2010 WL 1267809 (S.D. Ohio Mar. 30, 2010) .............................................................................. 17

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 522 N.E.2d 40 (1988) ........................................... 6

*LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471 (2d Cir. 2009) ........................................ 14

*Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353 (Fed. Cir. 2008) ..................... 15, 16

*LaMarca v. Pak-Mor Manufacturing Co.*, 95 N.Y.2d 210 (2000) ............................................ 9, 10, 11

*Louis Vuitton Malletier v. Dooney & Burke, Inc.*, 454 F.3d 108 (2nd Cir. 2006) ............................. 19

*Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ............... 4, 13

*Minibooster Hydraulics A/S v. Scanwill Fluid Power ApS*,
    315 F. Supp. 2d 286 (W.D.N.Y. 2004) ......................................................................................... 22

*Norex Petroleum Ltd. v. Access Industrial, Inc.*, 416 F.3d 146 (2d Cir.2005) ................................... 20

*Nova Wines, Inc. v. Adler Fels Winery LLC*, No. 06-06149 (MHP),
    2006 WL 3498574 (N.D. Cal. 2006) ........................................................................................ 17, 18

*Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266 (2d Cir.1999) ............................. 22

*Overseas Media, Inc. v. Skvortsov*,
    277 Fed. App'x 92, 2008 WL 1994981 (2d Cir. May 8, 2008) ...................................................... 21

*Palmer v. Braun*, 376 F.3d 1254 (11th Cir. 2004) ............................................................................ 16

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, No. 08-3398-cv, 2009 U.S. App. LEXIS
    20652 (2d Cir. Sept. 17, 2009) .................................................................................................... 15

*Pearson Education, Inc. v. Textbook Discounters*, 2010 U.S. Dist. LEXIS 91578 (S.D.N.Y. Aug. 20, 2010) ................................................................................................................ 4, 6, 12, 13

*Penguin Group (USA) Inc. v. America Buddha*, 609 F.3d 30 (2d Cir. 2010) ..................................... 10

*SEC v. Sierra Brokerage Services, Inc.*, 608 F. Supp. 2d 923 (S.D. Ohio 2009) ............................... 16

*Societe Des Hotels Meridien, Meridien, S.A., et al. v. LaSalle Hotel Operating P'ship, L.P., et al.*, No. 02-civ-4090 (JSM), 2002 U.S. Dist. LEXIS 15311 (S.D.N.Y. Aug. 19, 2002) ........... 19

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088 (9th Cir 1994) ..................................... 15

*Sunward Electrics, Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004) ..................................................... 4

*The Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.*, No. 04-Civ-5002 (JSR), 2005 U.S. Dist. LEXIS 2143 (S.D.N.Y. Feb. 14, 2005) ................................................................................ 10

*In re Travel Agent Commission Anti-Trust Litigation*, 583 F.3d 896 (6th Cir. 2009) ........................ 14

*United States v. Lloyds TSB Bank PLC*, 639 F. Supp. 2d 326 (S.D.N.Y. 2009) ................................. 14

*Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928 (2d Cir. 1988) .................................................. 4

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir.2000) .................................................. 20, 25

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ............................................... 12, 13

## STATUTES AND RULES

17 U.S.C. § 106(3) ........................................................................................................................... 16

FRCP 12(b) ................................................................................................................................. 4, 14, 16

NY CPLR § 302 ........................................................................................................................... passim

## MISCELLANEOUS

Siegel, New York Practice §88, (3d ed) .................................................................................... 10, 11

**PRELIMINARY STATEMENT**

Plaintiff is a successful, professional fashion photographer.  In February 2009, he created a distinctive photographic image (the "Byun Image") that was subsequently widely published in a variety of places and was registered with the U.S. Copyright Office.

Plaintiff's Complaint adequately alleges claims for federal copyright and trademark infringement, and other attendant state law claims, arising out of the offer and sale in New York of the music album entitled "Past<Future" (in both CD and DVD form) released by Japanese Pop Star, defendant Namie Amuro.  Ms. Amuro's album contains artwork that infringes Plaintiff's intellectual property rights in the Byun Image.

Notwithstanding that Ms. Amuro's album is in fact sold in New York, defendants Namie Amuro, Avex Group Holdings, Inc., Avex Entertainment, Inc., Avex Marketing, Inc., Vision Factory Co., Ltd., TBWA\Hakuhodo, Amana Inc., Blaugrana Co., Ltd., Monster Ultra Inc., and Shoji Uchida (collectively the "Defendants") have moved to dismiss on grounds of lack of personal jurisdiction, claiming that they never expected or intended that Ms. Amuro's album would be sold in New York.  Moreover, they argue that this case should be dismissed on *forum non conveniens* grounds, and that Plaintiff, a New York resident, should be forced to bring proceedings in Japan to enforce his U.S. copyright and trademark claims arising from the sale of infringing images in New York.  Finally, Defendants argue that none of Plaintiff's allegations state a claim as a matter of law.

For the reasons set forth below, Defendants' motion should be denied in its entirety.

**STATEMENT OF FACTS**

Plaintiff David Byun ("Byun" or "Plaintiff") is a citizen of the United States and a resident of the State of New York.  (Compl. ¶ 6; [1] Byun Decl. ¶¶ 1-2.[2])  Byun is a successful professional photographer who designs and creates fashion and other photography for domestic and international

---

[1] "Compl." refers to the Complaint filed in this action.
[2] "Byun Decl." refers to the Declaration of Plaintiff David Byun dated March 8, 2011.

clients and his work has appeared in fashion and other magazines worldwide.  (Compl. ¶ 6; Byun Decl. ¶ 3.)

In or around February 2009, Byun designed and created the Byun Image, depicting a woman ripping a photograph of her own face in half as she stares directly at the camera through the tear in the partially ripped photograph.  (Compl. ¶ 19; Byun Decl. ¶ 4.)  The Byun Image was created in a studio in New York City with the assistance of an eight-person creative team.  (Byun Decl. ¶¶ 6-7.)

The Byun Image was first published on or about February 19, 2009.  (Compl. ¶ 20; Byun Decl. ¶ 9.)  In or around February 2009, the Byun Image was published in the women's fashion magazine "W Korea" and on the "W Korea" website.  (Compl. ¶ 20; Byun Decl. ¶ 9.)  The Byun Image also was posted on Byun's website and on several fashion blog websites.  (Compl. ¶ 20; Byun Decl. ¶ 9.)  On or about December 18, 2009, the Byun Image was registered with the United States Copyright Office under registration number VA 1-696-660.  (Compl. ¶ 23; Byun Decl. ¶ 10.)

On or about December 16, 2009, defendants Namie Amuro ("Amuro"), Avex Group Holdings, Inc., ("AGH"), Avex Entertainment, Inc. ("Avex Entertainment"), Avex Marketing, Inc. ("Avex Marketing" and together with AGH and Avex Entertainment the "Avex Defendants") and Vision Factory Co., Ltd. ("Vision Factory") released a music record album entitled "Past<Future" (the "Album").  (Compl. ¶ 24.)  The Album was released in both CD and CD/DVD forms, with the DVD containing music videos from the Album.  (Compl. ¶ 24.)

The CD cover and inserts, CD/DVD cover and inserts, and Album promotional materials contain images of Amuro ripping a photograph of her own face in half, as she stares directly at the camera through the tear in the partially ripped photograph  (the "Album Images").  (Compl. ¶ 25.)  The CD cover image and the CD/DVD cover image are virtually identical, the only difference being that the images are at slightly different stages of the ripping process.  (Compl. ¶ 25.)  Plaintiff alleges that the Album Images are substantially similar to the Byun Image and the Album Images are the same expression of the idea depicted in the Byun Image.  (Compl. ¶¶ 26-7.)

2

Prior to the Complaint being filed, the Album was being offered for sale in New York.  On March 9, 2010, a copy of the CD/DVD set of the Album and two copies of the Album CD were purchased at a high-end Japanese language bookstore in midtown Manhattan.  (De Palma Decl. ¶¶ 6-8.[3])  The Album was still available for purchase at that same bookstore just prior to the time Plaintiff filed his Complaint on July 15, 2010.  (Hoenig Decl. ¶ 3.[4])  The Album Images were also displayed on Amuro, Avex Defendants, and Vision Factory's websites and able to be viewed online in New York.  (De Palma Decl. ¶ 4.)

In addition, currently, the Album CD and CD/DVD can be purchased in New York through the internet.  (Compl. ¶ 48; Byun Decl. ¶ 13; Hoenig Decl. ¶¶ 5-8.)  Amuro's official website operated by Avex Defendants directs users to an online music retailer that sells and ships the Album to New York.  (Hoenig Decl. ¶¶ 5-8.)  The Album and Album Images can also be purchased in New York via Amazon.com.  (Byun Decl. ¶ 13.)  The Album is available for purchase at retail stores in at least three other States: California, Oregon, and Washington.  (Arias Decl. ¶¶ 2-6.[5])

## ARGUMENT

### POINT I
### THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS

The Complaint and the affidavits in opposition to Defendants' motion establish a *prima facie* showing of personal jurisdiction over Defendants.  Plaintiff created the Byun Image in New York.  Defendants created the Album Image which was and is sold as part of the Album in New York.  Defendants now contend that they sell the Album only in Japan.  Defendants' bald statements are not enough to defeat Plaintiff's *prima facie* showing of jurisdiction and are otherwise contradicted by the evidence presented by Plaintiff in opposition to this motion.

---

[3] "De Palma Decl" refers to the Declaration of Richard De Palma dated March 9, 2011.
[4] "Hoenig Decl." refers to the Declaration of Michael Hoenig dated March 9, 2011.
[5] "Arias Decl." refers to the Declaration of Juan Carlos Arias dated March 8, 2011.

**A.      Determination of a Rule 12(b)(2) Motion**

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendants." *Pearson Educ., Inc. v. Textbook Discounters*, No. 10-Civ-324 (WHP), 2010 U.S. Dist. LEXIS 91578, at *2 (S.D.N.Y. Aug. 20, 2010) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)). However, prior to discovery, the plaintiff need only make a *prima facie* showing of jurisdiction through its own affidavits and supporting materials to defeat the motion. *Blakeman v. Walt Disney Co., et al.,* 613 F. Supp. 2d 288, 299 (E.D.N.Y. 2009) (citing *Welinsky v. Resort of the World D.N.V.*, 839 F.2d 928, 930 (2d Cir. 1988)). Furthermore, in considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be construed in the light most favorable to plaintiff and all doubts are to be resolved in plaintiff's favor. *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). Plaintiff's burden is satisfied even when the moving party makes contrary allegations that place in dispute the factual basis of plaintiff's *prima facie* case. *Hollins v. United States Tennis Ass'n*, 469 F. Supp. 2d 67, 70 (E.D.N.Y. 2006).

It is well settled that in diversity or federal question cases the court must look to the long-arm statute of the forum state, in this instance, New York. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (citations omitted). If the exercise of jurisdiction is appropriate under the statute, the court then must decide whether such exercise comports with the requisites of Due Process. *Metro. Life Ins. Co.*, 84 F.3d at 567. Thus, the district court should engage in a two-part analysis in resolving personal jurisdiction issues: (1) whether New York law confers jurisdiction over defendants; and (2) whether the exercise of jurisdiction over defendants comports with the Due Process Clause of the Fourteenth Amendment. *Id*.

**B.      New York's Long-Arm Statute**

New York Civil Practice Law and Rules ("CPLR") § 302(a) states that:

> [A] court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1.   transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2.   commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3.   commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i)   regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii)   expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

The offering for sale of even one copy of an allegedly infringing item within New York, even if no sale results, is sufficient to give personal jurisdiction over the alleged infringer under CPLR § 302(a), subd. 1, 2 and 3.   *See Cartier v. Seah LLC*,   598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009) (defendant's sale of infringing product to plaintiff's paralegal sufficient to exercise personal jurisdiction).   In this case, the Album is being offered for sale and has been purchased in New York and personal jurisdiction over Defendants is appropriate under CPLR § 302(a), subd. 1, 2 and 3.

## 1.   CPLR § 302(a)(1) – Defendants Contracted to Supply the Album in New York

CPLR § 302(a)(1) confers personal jurisdiction over a non-domiciliary who has contracted anywhere to supply goods or services in New York.   Proof of one transaction is sufficient.   *Editorial Musical Latino Americana, S.A. v. MAR Int'l Records, Inc.*, 829 F. Supp. 62, 65 (S.D.N.Y. 1993). Contracting with a distributor that results in distribution of an infringing work in New York renders exercise of personal jurisdiction proper under this section.   *Id*.

CPLR § 302(a)(1) also confers personal jurisdiction over a non-domiciliary who transacts any business within New York.   Personal jurisdiction under this prong is proper when the claim against the non-domiciliary arises out of that business activity.   *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364-5 (2d. Cir. 1986).   A non-domiciliary transacts business under CPLR § 302(a)(1) when

5

he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws. *Id*; *Pearson Educ., Inc.*, 2010 U.S. Dist LEXIS 91578, at *4. "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 522 N.E.2d 40, 43 (1988). The sale of even a single item over the internet that is shipped into New York can give rise to personal jurisdiction. *Pearson Educ., Inc.*, 2010 U.S. Dist LEXIS 91578, at *5 (plaintiffs made a *prima facie* showing of personal jurisdiction by alleging that defendants sold two infringing textbooks to plaintiffs' counsel over the internet).

Here, there is a *prima facie* showing that Avex Defendants have contracted to supply the Album in New York and are thus subject to jurisdiction pursuant to the "contracts anywhere" clause of CPLR § 302(a)(1). Plaintiff has alleged and proven that the Album is being sold in New York. (Compl. ¶ 47; De Palma Aff. ¶ 6; Hoenig Aff. ¶3.) There is no dispute that Avex Entertainment produced the Album (Compl. ¶ 39; Avex Entertainment Decl. ¶ 5) and Avex Marketing distributed the Album (Compl. ¶ 38; Avex Marketing Decl. ¶ 5.) Avex Entertainment approved where the Album would be distributed. (AGH Decl. ¶ 4.) Plaintiff has also alleged that AGH, as the parent company for Avex Entertainment and Avex Marketing, produced, manufactured, marketed, promoted, distributed, and sold the Album. (Compl. ¶ 41.) This allegation is supported by the insert to the Album CD and CD/DVD which, on the last page, gives credit to AGH as the "General Producer" of the Album. (Compl. Ex. B.)

These facts also support a determination that personal jurisdiction is appropriate pursuant to the "transacts business" prong of CPLR § 302(a)(1) as the claims asserted by Plaintiff are substantially related to the sale of the Album in New York.

6

A determination that jurisdiction exists over these Defendants is appropriate at this stage even though Defendants have made contrary allegations.  *See Hollins*, 469 F. Supp. 2d at 70. Moreover, many of Defendants' allegations are contradicted by facts submitted by Plaintiff.

**2.      CPLR 302(a)(2) – Defendants Committed a Tortious Act in New York**

It is well-settled that personal jurisdiction is appropriate over a person or agent who commits a tortious act within New York.  CPLR § 302(a)(2).  "Copyright infringement is a commercial tort that is deemed to take place at the point of consumer purchase." *Capitol Records, Inc. v. Kuang Dyi Co. of RM*, No. 03-Civ-0520 (LAP), 2004 U.S. Dist. LEXIS 3305, at *3 (S.D.N.Y. Mar. 4, 2004). "Offering one copy of an infringing work for sale in New York, even if there is no actual sale, constitutes commission of a tortious act within the state sufficient to imbue this Court with personal jurisdiction over the infringers." *Colour & Design v. U.S. Vinyl Mfg. Corp.*, No. 04-Civ-8332, 2005 U.S. Dist. LEXIS 10964, at *4 (S.D.N.Y. June 3, 2005) (citation omitted) (shipment and offer of sale of infringing goods to a New York customer was enough to confer personal jurisdiction over defendants, and defendants sold infringing goods to large commercial customers that displayed infringing goods in New York); *see also Editorial Musical Latino Americana, S.A.*, 829 F. Supp. at 65.

Moreover, a non-domiciliary who merely supplies infringing goods to the party that ultimately passes them off in New York will be subject to jurisdiction under CPLR § 302(a)(2) when the supplier has knowledge that the goods will or can reasonably be expected to be sold in New York, where they will infringe plaintiff's copyright.  *Capitol Records, Inc.*, 2004 U.S. Dist. LEXIS 3305, at *4.  *Editorial Musical Latino Americana, S.A.*, 829 F. Supp. at 65 ("This Court has jurisdiction even if the products for sale are offered through independent brokers in New York"); Blakeman, 613 F. Supp. 2d at 302 (personal jurisdiction appropriate over defendants who had knowledge that the infringing work would be distributed in the United States).

200785.4

The Album is being sold in New York.  (De Palma Aff. ¶ 6; Hoenig Aff. ¶ 3.)  It may reasonably be inferred that Defendants supplied the Album to distributors with knowledge that the Album either would or could reasonably be expected to be sold in New York.  *See Capitol Records, Inc.*, 2004 U.S. Dist. LEXIS 3305, at *2;  *Editorial Musical Latino Americana, S.A.*, 829 F. Supp. at 64-5.

Plaintiff alleged that the Defendants expected and/or intended that the Album would be distributed in New York.  (Compl. ¶ 42.)  Concededly, each defendant played some part in the creation of the Album and each of them knew that their efforts would culminate in the creation of the Album.  Each defendant knew or should have known that Amuro is a major Japanese recording artists with fans all over the world.[6]  Each defendant knew or should have known that Avex Defendants are large corporations that conducted business outside of Japan.  (Hoenig ¶¶ 9-11.)  Thus, each defendant should have known that the Album would be sold outside of Japan including in New York.  This conclusion is further supported by the facts that a person in New York (or anywhere in the world) may purchase the Album by clicking on a link from Amuro's official website.  (Hoenig Decl. ¶¶ 5-8.)  Thus, like the defendants in <u>Blakeman</u>, each defendant in this case took part in infringing Plaintiff's work and then passed it off to another defendant for distribution, which ultimately led to the Album being sold in New York.

Defendants' bald allegations that they did not intend the Album to be sold in New York are insufficient at this stage to prevent this Court from exercising personal jurisdiction over Defendants.  Defendants' conclusory assertion that they "took active measures to ensure that the Album was not available in the United States by prohibiting sales outside of Japan" is rebutted by several facts presented by Plaintiff.  Amuro's official website directs users to a website where they may purchase the Album from almost anywhere in the world—including from New York.  Plaintiff's counsel was

---

[6] Namie Amuro's official website is available in the English language (Hoenig Decl. ¶ 5) and is thus presumably intended for an English speaking audience.

able to purchase a copy of the Album CD over the internet by using the link on Amuro's official website.  (Hoenig Decl. ¶¶ 5-8.)

Defendants' allegation is also contradicted by the fact that the Album can easily be purchased in New York in person.  Plaintiff's attorney was able to purchase the Album CD and CD/DVD with relative ease at a high-end Japanese language book store in midtown Manhattan.[7]  (De Palma Decl. ¶ 6.)  The retailer where the purchase took place is a reputable chain with stores throughout the United States and the World.[8]  (Hoenig Decl. ¶ 4.)  Moreover, the Album can be purchased at other branches of the same store in at least three other States.  (Arias Decl. ¶¶ 2-6.)  All these facts point to the conclusion that Defendants expected the Album would be sold in New York.

### 3. CPLR 302(a)(3)(ii) – Defendants Committed a Tortious Act Outside of New York Injuring Plaintiff in New York

In order to establish jurisdiction under CPLR § 302(a)(3)(ii), a plaintiff is required to demonstrate that (1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce.  *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000).

In addition to the sale of the Album in New York, tortious acts—creation of the infringing Album Images by Defendants—were also committed in Japan.  Plaintiff's causes of action clearly arise from these alleged tortious activities.  Plaintiff also has alleged that Defendants' acts have caused harm, (Compl. ¶¶ 56, 65, 71, 77, 84, 93, and 100), and the injury is in New York.[9]

---

[7] It does not matter that the Album was purchased by Plaintiff's attorneys and not the Plaintiff.  *Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009) ("the fact that the purchaser happened to be an investigator in plaintiffs' employ does not go to the question of whether [defendant] purposefully availed itself of the privileges of doing business in New York.")

[8] This is not a case where a "pirated" version of the Album was purchased in New York from a seller on the street or out of a van.

[9] In copyright infringement cases, courts in the Second Circuit disagree whether the situs of injury for purposes of determining long-arm jurisdiction under CPLR § 302(a)(3)(ii) is the location of the infringing action or the residence

An objective test governs whether a defendant expects or should reasonably expect his acts to have consequences within New York. *Energy Brands Inc. v. Spiritual Brands, Inc., et al.*, 571 F. Supp. 2d 458, 467-8 (S.D.N.Y. 2008). A defendant need not foresee the specific event that produced the alleged injury. LaMarca, 95 N.Y.2d at 215. It must be foreseeable that the infringing products will make their way to New York and there must be evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market. *Energy Brands Inc.*, 571 F. Supp. 2d at 468 (reasonably foreseeable that publication of websites with offending marks would have consequences in New York).

Here, Defendants should reasonably have foreseen that acts of creating and distributing the infringing Album Image worldwide, including in New York, would have consequences in New York. The fact that the Album may be purchased by several means in New York shows that the sale of the Album in New York is not some extenuated happenstance that Defendants could not have foreseen, but rather the fruits of Defendants' efforts to serve the New York market. Indeed, Plaintiff's counsel was able to purchase the Album from the internet as a direct result of a link on Amuro's official Avex website. (Hoenig Decl. ¶¶ 5-8.) Also, the fact that Defendants distribute the Album through a company like HMV, a large retailer that sells products in many countries, reasonably alerted (or should have alerted) Defendants that the Album would be available in New York (and elsewhere in the United States). *See The Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.*, No. 04-Civ-5002 (JSR), 2005 U.S. Dist. LEXIS 2143, at *4 (S.D.N.Y. Feb. 14, 2005) (defendants reasonably should have expected that sales of infringing products would have consequences in New York when defendants sold infringing goods to major hotel chains with properties in New York).

The "derives substantial revenue" prong of CPLR § 302(a)(3)(ii) is designed to ensure that the defendant is economically big enough to defend suit in New York. *See* Siegel, New York

---

or location of the principal place of business of the copyright holder. *See Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30 (2d Cir. 2010). Because the Album is being sold in New York and Plaintiff resides in New York, under either line of cases, the situs of the injury is in New York.

Practice §88, at p. 151 (3d ed); *see also LaMarca*, 95 N.Y.2d at 215.  "There is no bright-line rule regarding when a specific level of revenue becomes substantial for purposes of CPLR § 302(a)(3)(ii)."  *Energy Brands Inc.*, 571 F. Supp. 2d at 468.  The "main concern is the overall nature of the defendant's business and the extent to which [i]t can fairly be expected to defend lawsuits in foreign forums."  *Id.* at 467-8.  "Additionally, dismissal for lack of personal jurisdiction is inappropriate under CPLR § 302(a)(3)(ii) even where there is no proof that a defendant derives substantial revenue from interstate or international commerce, where that knowledge is peculiarly under the control of the defendant, and may come to light in the course of subsequent discovery."  *Id.* (citation omitted).

It appears that the Avex Defendants derive substantial revenue from international and interstate commerce.  The AGH website states that "[t]he major markets for our music and visual content businesses are in East Asia. We have expanded our operations to mainland China, where significant growth is expected in the future."  (Hoenig Decl. ¶ 9.)  Thus, AGH is not merely a company conducting business in Japan, but a company with international operations generating revenue from other Eastern Asian countries.  (Hoenig Decl. ¶ 9.)  The AGH website also reveals that the Avex Defendants employ approximately 1,400 employees, and generated $1.4 billion in revenue in 2009.  (Hoenig Decl. ¶¶ 10-11.)  These figures demonstrate that the Avex defendants are economically capable of defending suit in New York.

Also, the Album is being sold in at least four States: New York; California; Oregon; and Washington.  (Arias Aff. ¶¶ 2-6.)  As the Album is being sold in multiple states, it appears that Defendants derive substantial revenue from interstate commerce.[10]

---

[10] Many of the facts required to ultimately prove personal jurisdiction are in the hands of the Defendants. While Plaintiff strongly believe he has alleged sufficient facts to establish a *prima facie* showing of jurisdiction, the Court may order discovery and/or an evidentiary hearing in lieu of dismissing the Complaint at this early stage.

**C.      Due Process**

"[A]s a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances than NY CPLR § 302, and a foreign defendant meeting the standards of § 302 will generally satisfy the Due Process standard."  *Energy Brands Inc.*, 571 F. Supp. 2d at 469;  *Capitol Records, Inc.*, 2004 U.S. Dist. LEXIS 3305, at *7 ("Ordinarily…if jurisdiction is proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the constitution permits.") (citations omitted).  Here, because Defendants meet the standards of CPLR § 302(a), the Defendants also meet the standards for jurisdiction under the Due Process Clause.

The due process test for personal jurisdiction has "two related concepts: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Pearson Educ., Inc.*, 2010 U.S. Dist LEXIS 91578, at *5  (quoting *Met. Life Ins.*, 84 F.3d at 567).

**1.      Minimum Contacts**

The "minimum contacts" test rests on whether a "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  As the Supreme Court stated in *World-Wide Volkswagen*, "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."  444 U.S. at 297-98.

By purposely sending the Album into the international and United States streams of commerce, there can be no doubt that Defendants conduct was directed at, among other places, New York. *See Pearson Educ., Inc.*, 2010 U.S. Dist LEXIS 91578, at *5-6.  Thus, the sale of the Album in New York satisfies the minimum contacts analysis. *See Capitol Records, Inc.*, 2004 U.S. Dist. LEXIS 3305, at *7-8 (assuming defendant's activities were limited to distribution, personal

jurisdiction would not offend Due Process where defendant expected product would be purchased in forum state).

### 2.      Reasonableness

Beyond minimum contacts, courts may consider additional factors to determine whether the exercise of personal jurisdiction "would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).  These factors include: "(1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering substantive social policies."  *Id*. at 477 (citing *World-Wide Volkswagen*, 444 U.S. at 292).   Importantly, however, where, as here, the defendants have minimum contacts with the forum state, the defendants "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*.

Defendants only assertion that jurisdiction would be unreasonable is that it "would impose a substantial burden on the Defendants[.]"  (Defendants' Memo p. 11).  However, Defendants' burden of having to defend this lawsuit in New York "cuts both ways" as Plaintiff and his witnesses would have to travel to Japan if the case were brought there.  *See Pearson Educ., Inc.*, 2010 U.S. Dist LEXIS 91578, at *6.  Further, "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago."  *Metropolitan Life*, 84 F.3d at 574.

All of the other factors of reasonableness weigh in favor of Plaintiff.  New York has a strong interest in preventing the intellectual property of its citizens from being infringed, especially where that infringement takes place in New York.  *See Pearson Educ., Inc.*, 2010 U.S. Dist LEXIS 91578, at *6.  Plaintiff has an interest in obtaining convenient and effective relief in New York.  Indeed, counsel for Defendants has stated that relief in Japan would not be effective as Plaintiff would not

have a case under Japanese law.  (De Palma Decl. ¶ 5.)  Dismissing this case and starting over in Japan would delay and complicate this controversy.  Finally, the United States has a strong interest in furthering the substantive social policies associated with Federal Copyright and Trademark laws, and protecting its citizens from the infringement by foreign persons.

**POINT II**
**PLAINTIFF'S COMPLAINT STATES VALID CLAIMS UPON**
<u>**WHICH RELIEF MAY BE GRANTED**</u>

**A.     Plaintiff Has Surpassed the Pleading Standards Set Forth in *Twombly***

Defendants' motion to dismiss for failure to state a claim on which relief may be granted under FRCP 12(b)(6) should be denied.  Plaintiff's Complaint is to be judged by the standards announced by the United States Supreme Court in *Bell Atl. Corp. v. Twombly* and its progeny,  such that to defeat a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." *Twombly*, 550 U.S. at 556; *see also In re Travel Agent Comm'n Anti-Trust Litig.*, 583 F.3d 896, 912 (6th Cir. 2009).   Thus, complaints need not contain every potential fact allegation, nor must a plaintiff allege sufficient facts to *prove* its case. *United States v. Lloyds TSB Bank PLC,* 639 F. Supp. 2d 326, 337-39 (S.D.N.Y. 2009).  Rather, complaints must only allege "facts suggestive of illegal conduct," *Twombly*, 550 U.S. at 564 n.8, and must be more than "an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal,* 129 S.Ct. at 1949.

It also is well established that, when reviewing a Rule 12(b)(6) motion, the Court must accept "the allegations in the amended complaint as true and drawing all reasonable inferences in plaintiffs' favor." *Claudio v. Sawyer*, No. 10-0145-cv, 2011 U.S. App. LEXIS 2700, at *2 (2d Cir. Feb. 10, 2011) (citing *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009),

14

*Iqbal*, and *Twombly*); s*ee also Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, No. 08-3398-cv, 2009 U.S. App. LEXIS 20652, at *3 (2d Cir. Sept. 17, 2009).

Moreover, under *Twombly* and it progeny, Defendants bear the burden of proving that Plaintiff's Complaint does not contain facts that "raise a reasonable expectation that discovery will reveal evidence of [infringement]." *Twombly*, 550 U.S. at 556. Stated another way, Defendants must prove that no reasonable fact-finder could (i) believe that Plaintiff has alleged "facts suggestive of illegal conduct," or (ii) form the inferences asserted by Plaintiff. *Twombly*, 550 U.S. at 564 n.8. The Defendants fail to satisfy this burden.

**B.     Plaintiff Has Stated a Proper Claim for Copyright Infringement (Count I)**

Defendants suggest that Plaintiff has alleged insufficient activities within the United States to state a claim under the United States Copyright Act. Although "the Copyright Act does not explicitly require that sales be 'in the United States,' … courts have generally held that the Copyright Act only does not reach activities 'that take place *entirely* abroad.'" *Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1371 (Fed. Cir. 2008) (citing *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1098 (9th Cir 1994) (emphasis added)). While conduct that is completely extraterritorial is not actionable, conduct that crosses borders, such that at least a part of the offense occurs within the United States, falls within the purview of the United States Copyright Act. *Id.* (citing to 4-17 *Nimmer on Copyrights* § 17.02). Thus, the Copyright Act[11] applies when an infringer sells a copyrighted work from another country to customers in the United States and ships that copyrighted work to the buyer in the United States without permission from the copyright owner. *Litecubes*, 523 F.3d at 1371. The *Litecubes* court found substantial evidence that sales by the defendant to customers in the United States constituted distribution of the accused products, at least in part, in the

---

[11] Under The Copyright Act, the owner of copyright has the exclusive rights to:  (i) reproduce the copyrighted work, (ii) prepare derivative works based on the copyrighted work, (iii) distribute copies of the copyrighted work, (iv) perform the copyrighted work publicly, (v) display the copyrighted work, and (vi) perform the copyrighted work publicly by digital audio transmission.  17 U.S.C. §106.

United States, even if only a part of the acts occurred within the United States.  *Id*.  Similarly, in *Palmer v Braun*, even though the allegedly infringing goods were created in France, the import of 25 copies into the United States for sale to customers resulted in an actionable claim in the United States. 376 F.3d 1254, 1258 (11th Cir. 2004).  "This is sufficient to support federal copyright jurisdiction, as it was done in the United States, and as *17 U.S.C. § 106(3)* outlaws distributing copies of copyrighted materials." *Id.* (citing *GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co.,* 782 F. Supp. 763, 772-73 (W.D.N.Y. 1991)).  Accordingly, sales of the Album CD and CD/DVD in stores in New York City, and via the internet throughout the United States, constitute infringing acts conducted within the United States, resulting in a sufficiently pled count of infringement of the Copyright Act.  (Compl. ¶¶ 47-48.)

Defendants erroneously state that Plaintiff has failed to allege with sufficient specificity what acts were performed by each Defendant.  However, a review of the Complaint shows that Plaintiff has alleged facts in sufficient detail to meet the requirements under FRCP 12(b)(6).  The Complaint describes the roles and infringing activities of the various participating Defendants in the infringement of Plaintiff's copyrights.  (Compl. ¶¶ 31-43, 47 and 48.)  Specifically, Plaintiff alleges facts including the creation of the infringing photographs from the initial photo shoot, visual design for the Album CD and DVDs, promotion and distribution of the Album CD and DVDs, and display and sale through the website which culminated in the sale of the Album CD and DVDs in United States.  (Id.)

Moreover, Plaintiff is not required to allege and prove each fact in its Complaint, but may rely upon reasonable inferences as well.  Plaintiff's reasonable inferences in the Complaint are properly based on direct and circumstantial evidence.  *See SEC v. Sierra Brokerage Servs., Inc.*, 608 F. Supp. 2d 923, 967 (S.D. Ohio 2009).  If an inference could be accepted by a reasonable fact-finder as true, it must be accepted by the court at the pleading stage as true.  *See City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 683 (6th Cir. 2005); *see also Imperial Hotels Corp. v.*

16

*Dore*, 257 F.3d 615, 621 (6th Cir. 2001).  Thus, in considering the Complaint, if a reasonable person, relying on his or her experience and common sense, can form the conclusion reached by the Plaintiff, the inference is reasonable.  *See Kline v. Mtg. Elec. Registration Sys., Inc.*, No. 3:08cv408 (WHR), 2010 WL 1267809, at *3 (S.D. Ohio Mar. 30, 2010); *Fulst v. Thompson*, No. 2:09-cv-72 (JLG), 2009 WL 4153222, at *3 (S.D. Ohio Nov. 20, 2009).

Defendants created, marketed, distributed and promoted the infringing material.  (Compl. ¶¶ 31-43, 47 and 48.)  The infringing Album CD and DVDs were available for sale in stores within the United States and was available for sale through Amuro and Avex Defendant's website.  (Id.)  A reasonable person would infer that Defendants, promoters, marketers and distributors of the infringing material, were responsible for distribution to the United States.

## C.      Plaintiff Has Stated Proper Claims Under The Lanham Act (Counts II and III)

Defendants repeatedly assert that Plaintiff's Lanham Act claims must be dismissed because they are erroneously predicated on a copyrighted photographic work which cannot serve as a source of goods as required under The Lanham Act.  Simply put, Defendants assert that the photograph cannot be a separate and distinct mark or trade dress, but rather is the good itself.

Defendants contention is erroneous.  It is well established that a work can be both copyrighted under the Copyright Act as well as serve as a source of goods under The Lanham Act. Section 301(d) of the Copyright Act states:  "Nothing in this title annuls or limits any rights or remedies under any other Federal statute."  Thus, the Copyright Act clearly and expressly allows a work to be protected under multiple intellectual property rights, including copyright, trademark, trade dress, or patent law.

Although the Lanham Act does not have an equivalent to section 301(d) of the Copyright Act, the courts have recognized that a work can be protected both as a copyrighted work and as trade dress under the Lanham Act.  *See Nova Wines, Inc. v. Adler Fels Winery LLC*, No. 06-06149 (MHP), 2006 WL 3498574 (N.D. Cal. 2006).  In *Nova Wines*, the court found that certain wine labels

17

containing historic photo portraits of Marilyn Monroe possessed both copyrighted rights under the Copyright Act (owned by the defendant) and trade dress rights under the Lanham Act (owned by the plaintiff).  *Id*.  In balancing these two intellectual property rights, the court ultimately held plaintiff's trade dress rights in the image and likeness of Marilyn Monroe were broader than and trumped the defendant's copyright interests in the photographs.  *Id.*

In the instant case, it is undisputed that Plaintiff's photograph at issue is a copyrighted work under the Copyright Act.  And as shown in *Nova Wines*, a copyrighted work such as a photograph can be afforded protection under the Lanham Act as both a trademark and trade dress. *Id*.  Thus, the question on the instant motion is whether the allegations in the Complaint regarding the Byun Image properly assert protection for it under the Lanham Act.  The answer is "Yes."

Plaintiff is a successful photographer known for designing and taking innovative photographs.  (Compl. ¶ 6.)  In particular, Plaintiff created the Byun Image.  (Compl. ¶ 19.)  The distinctiveness of the Byun Image identifies the Plaintiff as the source.  (Compl. ¶ 22.)  It is this distinctive look that was copied by Defendants and used on the Album CD, DVD and even posters. (Compl. ¶¶ 25-30.)

Defendants also claim that the Lanham Act is inapplicable because all of their alleged infringing conduct occurred outside of the United States.  However, Defendants' arguments fail in light of the established facts regarding Defendants' infringing acts conducted within the United States.  In particular, Defendants' infringing products (CD, DVD, and poster) are offered for sale, sold, and have been purchased directly in New York as well as are available via the internet for purchase and shipment into the United States.  Thus, at least a portion of the infringing activities were conducted within the United States, implicating the Lanham Act.

**D.   Plaintiff Has Stated Proper New York State Claims (Counts IV, V, VI, and VII)**

For the reasons stated above with respect to the Copyright and Lanham Act claims, Plaintiff's New York state claims are proper.  In particular, the New York claims of Counts IV (Deceptive Act

and Practices), V (Unfair Competition), and VII (Unjust Enrichment) are analyzed in the same manner as the corresponding federal claims under the Lanham Act.  *See Louis Vuitton Malletier v. Dooney & Burke, Inc.*, 454 F.3d 108, 119 (2nd Cir. 2006); *Info. Superhighway, Inc. v. Talk Am., Inc.*, 395 F. Supp. 2d 44, 56 (S.D.N.Y. 2005); *Societe Des Hotels Meridien, Meridien, S.A., et al. v. LaSalle Hotel Operating P'ship, L.P., et al.*, No. 02-civ-4090 (JSM), 2002 U.S. Dist. LEXIS 15311 (S.D.N.Y. Aug. 19, 2002).  Accordingly, because the Lanham Act claims of Counts II and III are proper, the New York claims of Counts IV, V, and VII are also proper.

Regarding Plaintiff's New York state claim of dilution in Count VI, the Second Circuit has found that "the federal dilution standard 'requires a showing of actual dilution, … and, thus, is more stringent than the New York standard.'"  *Louis Vuitton Malletier,* 454 F.3d 108 at 119 (citing *Savin Corp. v. Savin Group, et al.*, 391 F.3d 439, 456 (2nd Cir. 2004)).  The New York standard for a finding of dilution of a trademark or trade dress is a lower bar requiring merely a showing of a "likelihood of dilution."  *Id.*  This is an important distinction between an analysis of Plaintiff's federal dilution claim verses Plaintiff's New York dilution claim because only the federal claim requires a showing of <u>actual</u> dilution.  Thus, when reviewing Plaintiff's factual allegations in a light most favorable to Plaintiff, it is even more obvious that Plaintiff has pled a proper cause of action in Count VI directed to dilution under the New York statute.

## POINT III
### DEFENDANTS' MOTION TO DISMISS ON FORUM NON CONVENIENS GROUNDS SHOULD BE DENIED

Plaintiff's choice of this Court as the forum in which to bring his claims is entitled to a considerable degree of deference.  Moreover, it is well established that copyright and trademark rights are territorial in nature and "exist in each country solely according to that country's statutory scheme," *Fuji Photo Film Co. v. Shinohara Shoii Kabushiki Kaisha,* 754 F.2d 591, 599 (5th Cir. 1985).  This principle precludes Japan as an adequate alternative forum for U.S. copyright and trademark infringement claims.  Finally, the balance of private and public interests do not tip in favor

of adjudication in Japan so strongly that dismissal is required.  Defendants' motion to dismiss on these grounds should therefore be denied.

When deciding motions to dismiss based upon *forum non conveniens*, courts consider the following: (1) the degree of deference to be afforded to the plaintiff's choice of forum; (2) whether there is an adequate alternative forum for adjudicating the dispute; and (3) whether the balance of private and public interests tips in favor of adjudication in one forum or the other.  *Norex Petroleum Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 153 (2d Cir. 2005) (citing *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 73-74 (2d Cir. 2001)).   "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) (superseded on other grounds by 28 U.S.C. § 1404); *see also Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 100 (2d Cir. 2000) (holding that *forum non conveniens* is a proper ground for dismissal only in rare instances). "The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." *Iragorri,* 274 F.3d at 74-75.

**A.      Plaintiff's Chosen Forum is Entitled to Great Deference**

"[P]laintiff's choice of forum should rarely be disturbed."  *Gulf Oil Corp.*, 330 U.S. at 508; *See also*, *Wiwa*, 226 F.3d at 100 (dismissal only in rare instances).

To determine the appropriate amount of deference to be shown, a proper analysis requires consideration of several specific factors: (1) whether the plaintiff is a U.S. citizen; (2) the chosen forum's convenience *for the plaintiff*; (3) the availability of witnesses in the chosen forum; (4) the defendant's amenability to suit in the plaintiff's chosen forum; (5) the availability of appropriate legal assistance in the chosen forum; and (6) evidence of forum shopping on the part of the plaintiff.  *BFI Group Divino Corp. v. JSC Russian Aluminum,* 298 Fed. Appx. 87, 90 (2d Cir. 2008) (citing *Iragorri,* 274 F.3d at 72).

Weighing all the foregoing appropriate factors, Defendants have failed to establish that Plaintiff's choice of forum should be disturbed.

With respect to the first and second factors, Plaintiff is a citizen of the United States and he resides at 30 East 9th Street.  (Compl. ¶ 6; Byun Decl. ¶¶ 1, 2.)  Consequently the SDNY is his home forum.  *See Byrne v. British Broadcasting Corp.*, 132 F. Supp. 2d 229, 237 (S.D.N.Y. 2001) ("[T]he plaintiff's choice of forum is ordinarily given great deference, especially where the plaintiff has chosen its 'home forum.'") (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

Next, many of the witnesses to Plaintiff's creation of the Byun Image (who number at least eight, and include hair stylists, make-up artists, and Plaintiff's assistants), reside and work in New York.  (Byun Decl. ¶ 6.)  Concerning Defendants' amenability to suit, as noted above, Defedants are subject to this Court's jurisdiction.  With respect to the availability of appropriate legal assistance, both parties have retained competent New York counsel fully capable of litigating this dispute in this forum, as evidenced in part by the instant motion.  Finally, Defendants have not claimed or proffered evidence of forum shopping.

Defendants rely on *Overseas Media, Inc. v. Skvortsov*, 277 Fed.Appx. 92, No. 06-4095-cv, 2008 WL 1994981, at *3 (2d Cir. May 8, 2008), for the proposition that "[t]he deference afforded to Plaintiff's choice of forum does not justify hearing a dispute involving parties, conduct and evidence located almost entirely in Japan."  (Def. Mem. at 19.)  However, *Overseas Media* is distinguishable.  There, the Second Circuit granted a motion to dismiss based upon *forum non conveniens* largely in part because two out of the three plaintiffs in that case were foreign (Russian) and the dispute turned on a Russian contract and Russian law.  Here, neither is the case.  Plaintiff is not a "foreigner" ("a foreign plaintiff's choice of forum deserves less deference."  *Id.* (citing *Iragorri*, 274 F.3d at 71-72), nor do his claims turn on a Japanese contract or Japanese law, but instead on U.S. law.

**B.     Japan is not an Adequate Alternative Forum**

Preliminarily, "[i]t is the burden of the moving party to establish that the alternative forum is clearly more appropriate." *Minibooster,* 315 F. Supp. 2d at 290 (internal citations and quotation marks omitted).  Defendants have failed to satisfy this burden.

Defendants have not submitted any support for their statements that Japanese trademark or copyright protections and remedies will adequately address Plaintiff's allegations of infringement <u>in New York</u>.  The only statements on the relative merits of Plaintiff's claims under Japanese law come from the Avex Group's Japanese attorneys, who state that "[u]nder the Japanese Copyright Law and its jurisdiction, it is likely for a court to hold that there will be no likelihood [of infringement] between the Avex Photo and the Byun Photo . . . ."  (De Palma Decl. Ex. 2.)

In any event, Defendants cannot establish that Japan is an adequate forum in which to litigate Plaintiff's U.S. copyright and trademark claims.  "The courts of this district have declined to dismiss cases pursuant to *forum non conveniens* where plaintiff asserts U.S. trademark or copyright claims." *Jose Armando Bermudez & Co., v. Bermudez Int'l,* No. 99 Civ. 9346, 2000 WL 1225792, at *4 (S.D.N.Y. Aug.29, 2000).  In *Jose Armando Bermudez & Co.,* the district court rejected defendants' arguments that the proper forum was the Dominican Republic, where plaintiff already had another suit pending, finding that Dominican courts would not be able to grant an adequate remedy to plaintiff because "[t]rademark rights are largely territorial, as they 'exist in each country solely according to that country's statutory scheme.'" *Id.* (quoting *Fuji Photo Film Co.,* 754 F.2d at 599.

Moreover, because "a claimant's rights (or lack of rights) to a trademark in the United States cannot be established by the fact that the claimant was found by a foreign court to have (or not to have) rights over the same mark in a foreign country," *Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.,* 175 F.3d 266, 272 (2d Cir. 1999), suit in Japan will not decisively resolve Plaintiff's U.S. trademark and copyright claims.

**C.**     **Defendants Have Failed to Show That The Balance of Private and Public Interests Tips Decidedly In Favor of Adjudication in Japan**

Only after a court finds that an adequate alternative forum exists—and here it does not—will a court weigh the various private and public interests in the litigation. *See Jose Armando Bermudez & Co.,* 2000 WL 1225792, at *3 ("If a court determines that an adequate forum exists, it must then weigh certain 'public' and 'private' interests identified in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)").   See also *Byrne*, 132 F. Supp. 2d at 237 (noting that the *Gilbert* factors should be considered only after a court finds that an alternative forum is available).

In order to satisfy this prong of the analysis, Defendants must show that the balance of public and private interests is strongly in favor of litigating in Japan in order to overcome the substantial weight accorded Plaintiff's choice of forum.   *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002).   "[D]ismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice."   *Byrne*, 132 F. Supp. 2d at 237 (quoting *Piper Aircraft Co.*, 454 U.S. at 249).

"The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having controversies decided at home; (3) the interest in having the trial in a forum that is familiar with the law governing the action; (4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Byrne*, 132 F. Supp.2 d at 238 (citation and internal quotation marks omitted).

None of the public interest factors support dismissal.   In fact, the reverse is true.   Although Defendants have pointed out that this Court has a very active caseload, they have failed to establish that the appropriate Japanese courts are any less congested.   Clearly, both the United States and New York State have strong interests in the outcome of this dispute because it involves the adjudication of a U.S. citizen's U.S. copyright and trademark rights.   The fourth public interest factor is not

23

implicated because the dispute does not involve the application of Japanese law.  The fifth and final factor likewise favors Plaintiff since U.S. citizens have an interest in the vindication of Plaintiff's copyright and trademark rights, whereas Japanese citizens would not.

"The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) [i]ssues concerning the enforceability of a judgment; and (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive-or the opposite." *Byrne*, 132 F. Supp. 2d at 238 (citation and internal quotation marks omitted).

Again, as with the public interest factors, none of the private interest factors weigh heavily in favor of dismissal.  Although there will clearly be witnesses and documents located in Japan, substantial evidence and witnesses exist in New York, where the infringement in fact occurred through the offer and sale of the Album.  Most of the sales data is likely to be electronic in any event.  Defendants have failed to establish that there are any obstacles to producing documents or presenting any evidence in this Court.  Such a showing is especially required since "advances in transportation and communication afford this issue less weight."  *DiRienzo*, 294 F.3d at 30.

Defendants also indicate that Plaintiff will have difficulty in compelling the attendance of unwilling witnesses who live in Japan.  Defendants fail to specify any such witnesses and, in any event, the testimony of Japanese witnesses can be obtained by other means, e.g., videotaped depositions.  Also, were this case to be litigated in Japan, Defendants would likewise have difficulty compelling the attendance of unwilling witnesses residing in the United States.  "[W]here potential witnesses reside in both potential forums as well as in other locations, the hardship of procuring witnesses generally does not favor dismissal." *See Byrne*, 132 F. Supp. 2d 229, 238.

Regarding the cost of obtaining willing witnesses, the costs to Plaintiff (an individual) would likely exceed the cost to Defendants (several of which are multi-million dollar corporations).  *See Cordon Holding B.V. v. Northwest Pub. Corp.*, No. 98 Civ. 4797, 1998 WL 867388, at *3 (S.D.N.Y.

Dec. 14, 1998) (noting that courts generally "accord the convenience of party witnesses less weight than they do the convenience of non-party witnesses").  Defendants have ample resources and have already retained competent New York counsel.   Therefore, the expense and inconvenience Defendants will incur in litigating this action in New York are far outweighed by the expense and inconvenience Plaintiff would face if forced to litigate his claims in Japan.  See e.g. *Wiwa*, 226 F.3d at 107.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that Defendants' motion should be denied in its entirety.

Respectfully submitted,


 _/s/ Richard De Palma_____
Richard De Palma
Jeanette Rodriguez-Morick
Michael Hoenig
THOMPSON HINE LLP
335 Madison Avenue, 12th Fl.
New York, New York 10017

*Attorneys for the Plaintiff*
*David Byun*


*On the Brief:*
Megan Dortenzo, Esq.
Jodi Clifford, Esq.

200785.4

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2011, I caused to be served copies of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, the Declaration of David Byun, the Declaration of Richard De Palma, the Declaration of Michael Hoenig, and the Declaration of Juan Carlos Arias upon all attorneys of record by electronic means through the Court's ECF system.


/s/ Richard De Palma

Richard De Palma

26

200785.4